# 26-1379

## United States Court of Appeals
FOR THE SECOND CIRCUIT

Rafael Polanco, Monique Johnson, individually and as representatives of a class of participants and beneficiaries on behalf of the WPP Group USA, Inc. Savings and Investment Plan

*Plaintiffs-Appellants,*

v.

WPP Group USA, Inc., d/b/a WPP IT, Administrative and Investment Committee of the Savings and Investment Plan

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York
Hon. John G. Koeltl, No. 1:24-cv-9548-JGK

**OPENING BRIEF OF PLAINTIFFS-APPELLANTS**

Rachana A. Pathak
Douglas D. Geyser
STRIS & MAHER LLP
17785 Center Court Dr. N, Suite 600
Cerritos, CA 90703
Telephone: (213) 995-6800
rpathak@stris.com

Jeff Hahn
STRIS & MAHER LLP
1601 K Street NW, Suite 1050
Washington, D.C. 20006
Telephone: (202) 294-5497
jhahn@stris.com

***Counsel for Plaintiffs-Appellants (additional counsel listed on inside cover)***

Andrew Kenton Glenn
GLENN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas, 22nd Floor
New York. NY 10036
Telephone: (212) 970-1600
aglenn@glennagre.com

Tulio D. Chirinos
CHIRINOS LAW FIRM PLLC
20283 State Road 7, Suite 592
Boca Baton, FL 33498
Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..... i
TABLE OF AUTHORITIES ..... iii
INTRODUCTION ..... 1
JURISDICTIONAL STATEMENT ..... 3
ISSUES PRESENTED ..... 4
STATEMENT OF THE CASE ..... 5
I. Statutory Background ..... 6
II. Factual Background ..... 9
III. Procedural History ..... 12
A. The Original Complaint and First Dismissal Decision ..... 12
B. The Amended Complaint and Second Dismissal Decision ..... 15
SUMMARY OF THE ARGUMENT ..... 17
STANDARD OF REVIEW ..... 21
ARGUMENT ..... 21
I. Plaintiffs plausibly alleged that Defendants breached their fiduciary duties ..... 21
A. Defendants are indisputably ERISA fiduciaries ..... 22
B. Defendants breached their fiduciary duties in allocating Plan Forfeitures ..... 24
1. The Plan Committee breached its duty of loyalty ..... 25
2. The Plan Committee breached its duty of prudence ..... 28
3. WPP breached its duty to monitor the Plan Committee ..... 31
C. Defendants' breaches caused losses to the Plan and its participants ..... 32
II. The district court erred in dismissing Plaintiffs' claims ..... 32

A. The district court's reasons for dismissing Plaintiffs' disloyalty claim against the Committee are contrary to ERISA and the rules of pleading.....33

1. ERISA fiduciaries do not fulfill their duties solely by paying benefits due under plan terms.....33

2. Speculation that WPP might have reduced its contributions if the Committee used Forfeitures to pay Plan Expenses is not a proper basis for dismissal.....37

3. Pronouncements by the Departments of Treasury and Labor on which the court relied are either irrelevant or unhelpful.....39

B. The district court's dismissal of Plaintiffs' imprudence claim against the Plan Committee ignored the Amended Complaint's factual allegations and misunderstood ERISA's fiduciary duties.....42

C. Because the district court wrongly dismissed the underlying fiduciary-breach claims against the Committee, it wrongly dismissed the derivative claim against WPP for failing to monitor the Committee.....47

CONCLUSION.....47

CERTIFICATE OF COMPLIANCE.....48

CERTIFICATE OF SERVICE.....49

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beck v. PACE Int'l Union*,
551 U.S. 96 (2007)....................40

*Bouboulis v. Transp. Workers Union of Am.*,
442 F.3d 55 (2d Cir. 2006)....................22

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir.), *cert. denied sub nom. Argent Tr. Co. v. Cedeno*, 145 S. Ct. 447 (2024)....................21

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982)....................8, 25

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)....................20, 44, 45

*Gardner-Keegan v. W.W. Grainger, Inc.*,
No. 1:25-CV-5233, 2026 WL 194772 (N.D. Ill. Jan. 26, 2026)....................39

*Graden v. Conexant Sys., Inc.*,
496 F.3d 291 (3d Cir. 2007)....................36

*In re Halpin*,
566 F.3d 286 (2d Cir. 2009)....................7

*Hancock v. Cnty. of Rensselaer*,
882 F.3d 58 (2d Cir. 2018)....................15

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*,
751 F.3d 740 (6th Cir. 2014)....................7

*Howell v. Motorola, Inc.*,
633 F.3d 552 (7th Cir. 2011)....................31

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)....................35

*John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*,
26 F.3d 360 (2d Cir. 1994) ....................................................................25

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008)................................................................................8

*McManus v. Clorox Co.*,
No. 4:23-CV-05325-YGR, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025) ..........................................................................................43, 45

*Olson v. Major League Baseball*,
29 F.4th 59 (2d Cir. 2022) ................................................................21, 38

*Pegram v. Herdrich*,
530 U.S. 211 (2000)..........................................................................25, 27

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ..............................................................21, 28

*Pension Ben. Guar. Corp. v. LTV Corp.*,
496 U.S. 633 (1990)..............................................................................40

*Pessin v. JPMorgan Chase U.S. Benefits Exec.*,
112 F.4th 129 (2d Cir. 2024) ...................................................................24

*Rinehart v. Lehman Bros. Holdings Inc.*,
817 F.3d 56 (2d Cir. 2016) ......................................................................47

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ................................................................*passim*

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
780 F. Supp. 3d 870 (D. Ariz. 2025) .........................................................14

*Spillane v. New York City Dist. Council of Carpenters*,
No. 23-247, 2024 WL 221816 (2d Cir. Jan. 22, 2024).....................................34

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*,
961 F.3d 91 (2d Cir. 2020) ......................................................................35

*Thole v. U. S. Bank N.A.*,
590 U.S. 538 (2020)....................................................................................40

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015)......................................................................................6

*United States v. Anderson*,
15 F.3d 278 (2d Cir. 1994) ........................................................................34

*In re: UnitedHealth ERISA 401(k) Litig.*,
No. 25-CV-1751, 2026 WL 1786167 (D. Minn. June 22, 2026) ...........27, 30, 37

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)...............................................................................22, 34

**Statutes**

26 U.S.C. § 401(a)(8).....................................................................................40

28 U.S.C. § 1291 ..............................................................................................3

28 U.S.C. § 1331 ..............................................................................................3

29 U.S.C. § 1001(a) ..........................................................................................6

29 U.S.C. § 1001(b) ..........................................................................................8

29 U.S.C. § 1002(21)(A)(i)......................................................................8, 22, 23

29 U.S.C. § 1002(21)(A)(iii)....................................................................8, 22, 23

29 U.S.C. § 1002(34) ........................................................................................6

29 U.S.C. § 1002(35) ........................................................................................6

29 U.S.C. § 1053(a)(1).......................................................................................7

29 U.S.C. § 1053(a)(2)(B) ..................................................................................7

29 U.S.C. § 1102(a) ..........................................................................................8

29 U.S.C. § 1103(a) ..........................................................................................7

29 U.S.C. § 1103(c)(1).......................................................................................8

29 U.S.C. § 1103(c)(2) ..... 7

29 U.S.C. § 1104 ..... 34

29 U.S.C. § 1104(a) ..... 19, 34, 46

29 U.S.C. § 1104(a)(1)(A) ..... 1, 9, 12

29 U.S.C. § 1104(a)(1)(B) ..... *passim*

29 U.S.C. § 1104(a)(1)(D) ..... 20, 34, 44

29 U.S.C. § 1106 ..... 13, 34

29 U.S.C. § 1109(a) ..... 21

29 U.S.C. § 1132(a)(1)(B) ..... 18, 33, 34, 36

29 U.S.C. § 1132(a)(2) ..... *passim*

29 U.S.C. § 1132(a)(3) ..... 12, 19, 22, 34, 36

29 U.S.C. § 1132(a)(5) ..... 34

29 U.S.C. § 1132(e) ..... 3

29 U.S.C. § 1135 ..... 41

29 U.S.C. § 1322(a) ..... 40

29 U.S.C. § 1322(b) ..... 40

**Other Authorities**

26 C.F.R. § 1.401-7(a) ..... 14, 39, 40

29 C.F.R. § 2509.75-8 ..... 23, 31

Brief of U.S. Sec'y of Lab. as Amicus Curiae, *Hutchins v. HP Inc.*, No. 25-826 (9th Cir. July 9, 2025), ECF No. 24-1 ..... 42

Fed. R. App. P. 4(a)(1)(A) ..... 3

Reorganization Plan No. 4 of 1978 ..... 41

Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282
(proposed Feb. 27, 2023) ....................................................................41, 42

Wooten, James A., *The Employee Retirement Income Security Act of 1974*: *a Political History* 1 (2004)...........................................................................6

## INTRODUCTION

This case presents a straightforward application of ERISA's fiduciary standards to a fiduciary's discretionary decision over how to spend retirement plan assets. The plan assets at issue here are called forfeitures, which occur when a plan participant leaves employment before being fully vested in their employer's contributions to their plan account. Because those unvested contributions—though forfeited by the departing employee—remain plan assets, a plan fiduciary must re-allocate them to other plan purposes. If the plan gives the fiduciary discretion over how to do so, the fiduciary's allocation (like any discretionary act) must adhere to ERISA's strict fiduciary standards, including its duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1)(A)-(B). This means that the decision must be solely in the interest of the plan's participants (loyalty) and stem from a reasoned decision-making process (prudence).

The retirement plan sponsored by WPP Group USA, Inc. ("WPP") gave the plan's administrator—a Committee appointed by WPP—discretion over how to deploy forfeitures. One option was to use forfeitures to pay plan expenses otherwise deducted from participant accounts, and thereby increase participant account balances. Another option was to use these plan assets to offset WPP's future contributions to the plan. Under the facts alleged in this case, this latter option was comparatively worse for participants, as there was no reason to expect that WPP—

an enormous company that earned over $1.2 billion in annual profits during the relevant period—needed any offsets to make its contribution payments. To nevertheless use forfeitures on contribution offsets and not on plan expenses would *not* change the total contributions made to participant accounts but *would* leave participants still to pay plan expenses.

But that is precisely what the Committee did. From 2019 to 2023, it used hardly any forfeitures on plan expenses, thereby sticking participants with most of the bill. Yet the Committee saw fit to devote over $36.6 million in forfeitures to offset WPP's contributions over the same period. While these offsets directly benefited WPP by reducing the payments it otherwise would have made out of its own coffers, they were objectively worse for participants than if the Committee had used forfeitures on plan expenses. The Committee's consistent and reflexive choice of the option that plainly disfavored participants and benefited WPP violated ERISA's duties of loyalty and prudence. And through those breaches, it can also reasonably be inferred that WPP violated its fiduciary duty to monitor its appointee, the Committee.

Yet the district court dismissed all three claims. Among other errors, the district court wrongly believed that a fiduciary's duties are fully discharged so long as the fiduciary does not violate plan terms. That rationale is irreconcilable with ERISA provisions and precedent from the Supreme Court (and this Court) making

clear that ERISA's fiduciary duties trump plan terms, and authorizing fiduciary-breach claims for myriad violations that do not involve nonpayment of benefits or plan-term violations. If left to stand, the district court's decision would immunize fiduciaries from liability even where they take discretionary actions *directly* at odds with participant interests, as was the case here, so long as they don't violate plan terms. This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331, because Plaintiffs asserted claims created by a federal statute, ERISA. This Court has appellate jurisdiction under 28 U.S.C. § 1291. The district court dismissed with prejudice Counts I, III, and IV of the Original Complaint in an Order entered on October 27, 2025. JA105. That Order also dismissed without prejudice Counts II and V, and granted Plaintiffs leave to replead those counts. After Plaintiffs filed an Amended Complaint repleading the two counts previously dismissed without prejudice, the district court dismissed both claims with prejudice and entered final judgment in favor of Defendants on April 24, 2026. JA166-167. Plaintiffs filed a Notice of Appeal on May 18, 2026. JA168. The Notice of Appeal was timely under Fed. R. App. P. 4(a)(1)(A).

## ISSUES PRESENTED

1. Whether Plaintiffs state a plausible claim that the Plan Committee breached ERISA's fiduciary duty of loyalty, where they allege that the Committee's discretionary decisions to use Plan assets (forfeitures) to offset WPP's future contributions (which saved WPP money) rather than pay the Plan's administrative expenses (which would have saved participants money) favored WPP over the Plan and its participants.

2. Whether Plaintiffs state a plausible claim that the Plan Committee breached ERISA's fiduciary duty of prudence, where they allege that the Committee's discretionary decisions to use Plan assets (forfeitures) to offset WPP's future contributions rather than pay the Plan's administrative expenses were made consistently and reflexively, and without any indication that doing so was better for the Plan and its participants.

3. Whether Plaintiffs state a plausible claim that WPP—which appointed and had the authority to remove the members of the Plan Committee—breached ERISA's fiduciary duty of prudence for failing to monitor the Plan Committee, where Plaintiffs state plausible claims against the Committee for breaching its duties of prudence and loyalty.

## STATEMENT OF THE CASE

This case is a putative ERISA class action brought by participants in the WPP Group USA, Inc., Savings and Investment Plan ("the Plan"), a defined contribution retirement plan sponsored by WPP Group USA, Inc. ("WPP"). Plaintiffs allege that the Plan's administrator, the Administrative & Investment Committee of the Savings and Investment Plan ("the Committee"), breached ERISA's fiduciary standards by consistently and reflexively applying forfeited Plan assets to offset WPP's future employer contributions rather than pay the Plan's administrative expenses, and that WPP failed adequately to monitor the Committee. In two separate dismissal orders, the district court (Hon. John G. Koeltl) dismissed all of Plaintiffs' claims, only three of which are relevant here. In the first order, the district court dismissed with prejudice Plaintiffs' claim for breach of ERISA's duty of loyalty against the Plan Committee, and dismissed without prejudice (while granting leave to replead) the claims against the Committee for breach of ERISA's duty of prudence and against WPP for failing to monitor the Committee. JA105. After Plaintiffs filed an Amended Complaint asserting only the latter two claims, the district court dismissed both with prejudice in a second order. JA166; JA167. A more thorough recitation of this case's background is set out below.

## I. Statutory Background

The Employee Retirement Income Security Act of 1974 (ERISA) "was Congress's attempt to devise a comprehensive regulatory program to protect millions of American workers who looked to private pension plans for financial support in their retirement years." James A. Wooten, *The Employee Retirement Income Security Act of 1974*: *a Political History* 1 (2004); *see* 29 U.S.C. § 1001(a) (explaining that ERISA establishes "safeguards" regarding "the establishment, operation, and administration of" employee benefit plans, due to the "millions of employees and their dependents [who] are directly affected by these plans"). ERISA regulates all employer-sponsored retirement plans (referred to as "employee pension benefit plan[s]"), which it divides into two broad categories: "defined benefit" and "defined contribution" plans. 29 U.S.C. § 1002(34)-(35).

As relevant here, a defined contribution plan (sometimes referred to as an "individual account plan") "provides for an individual account for each participant[.]" 29 U.S.C. § 1002(34). Benefits are "based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." *Id.* "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015).

Contributions to a participant's defined contribution plan account are typically made by both the participant and the plan's sponsor (the participant's employer). While participants are always fully vested in their own contributions, 29 U.S.C. § 1053(a)(1), plans may subject employer contributions to a vesting schedule, 29 U.S.C. § 1053(a)(2)(B). This means that participants may be required to remain employed for a number of years in order to be fully vested in the amounts contributed by their employer.

But even when participants leave employment before being fully vested in some or all of their employers' contributions, those contributions—though "forfeited" by the departing employee—remain assets of the plan. That is because *all* contributions to a defined contribution plan, including employer contributions, become plan assets immediately upon being paid into the plan. *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 745 (6th Cir. 2014); *see also In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009) ("employer contributions become [plan] assets only after being paid"). ERISA forbids employer contributions from reverting to the employer, except in limited situations not relevant here. *See* 29 U.S.C. § 1103(c)(2). Rather, ERISA requires that "all assets of an employee benefit plan shall be held in trust." 29 U.S.C. § 1103(a). Plan assets "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing

benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1).[1]

ERISA requires every plan to have at least one named fiduciary endowed with authority to administer the plan, 29 U.S.C. § 1102(a), and defines fiduciary to include anyone who "has" discretionary authority in plan administration, 29 U.S.C. § 1002(21)(A)(iii). It further extends fiduciary status to anyone—even if not named as such in the plan—who, in practice, "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).

ERISA also subjects all fiduciaries to "standards of conduct, responsibility, and obligation." 29 U.S.C. § 1001(b). This Court has described ERISA's fiduciary standards as "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272, n.8 (2d Cir. 1982). Among them is the duty of loyalty, which requires that fiduciaries discharge their duties "solely in the interest of the [plan's] participants and beneficiaries" and for the "exclusive purpose" of providing benefits and

[1] These rules apply with full force to defined contribution plans. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 262 (2008) (Thomas, J., concurring) ("The allocation of a plan's assets to individual accounts for bookkeeping purposes does not change the fact that all the assets in the plan remain plan assets. A defined contribution plan is not merely a collection of unrelated accounts. Rather, ERISA requires a plan's combined assets to be held in trust and legally owned by the plan trustees.").

"defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Another is the duty of prudence, which requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

## II. Factual Background

Plaintiffs Rafael Polanco and Monique Johnson are former employees of WPP and participants in the Plan. JA108-109 (¶¶ 10-11). The Plan is an ERISA-covered defined contribution plan for employees of WPP. JA108 (¶ 9). Defendant Plan Committee is the Plan's administrator and therefore a Plan fiduciary. JA109-110 (¶¶ 17, 20). Defendant WPP, the Plan's sponsor, is a named fiduciary that appointed the members of the Committee and has the discretionary authority to remove them. JA110 (¶¶ 19-20).

A participant's retirement benefit in the Plan is a function of the amounts that both the participant and WPP contribute to the Plan, plus any investment returns on those contributions, less any Plan-related administrative expenses ("Plan Expenses"). JA115 (¶ 42). Regarding Plan Expenses, the Plan pays a variety of service providers for tasks like recordkeeping, accounting, trustee services, and investment management services. JA118 (¶¶ 55-56). The use of Plan assets to pay

Plan Expenses reduces the funds available to participants for investment and thereby reduces the value of individual participant accounts. *Id.* (¶ 57). Between 2019 and 2023, annual Plan Expenses ranged from about $1.2 million (in 2019) to about $1.6 million (in 2022), totaling roughly $7.2 million during that time. JA121 (¶ 66).[2] The vast majority of these Plan Expenses (roughly $6.7 million) were borne by the Plan's participants, JA120 (¶ 63), and thereby reduced the value of participant accounts, *see* JA134 (¶ 126).

As to contributions, all amounts contributed to the Plan—regardless of their source—are held in a trust fund. JA115 (¶ 41). Contributions by WPP are made annually, in WPP's discretion, and primarily come in two forms—Matching Contributions and Profit Sharing Contributions (collectively, "Company Contributions"). JA116-117 (¶¶ 45-46, 49). Whereas participants are immediately vested in their own contributions and any earnings thereon, they generally are not vested in Company Contributions until they complete three years of employment. JA117 (¶ 50). If a participant terminates employment before then, the participant "forfeits" any unvested Company Contributions and any earnings thereon ("Forfeitures"). *Id.* (¶ 51). Forfeitures do not return to the Company but instead remain Plan assets. *See id.* Between 2019 and 2023, annual Plan Forfeitures ranged

[2] This total likely understates the amount of Plan Expenses paid during the relevant period because it does not include any undisclosed indirect compensation paid to service providers. JA118, n.6.

from about $10.4 million (in 2019) to about $16.9 million (in 2021), totaling approximately $71.4 million during that time. JA119 (¶ 60).

The Plan gives the Committee broad discretion as to how to allocate Forfeitures. It instructs that any Forfeitures "arising under the Plan for a given Plan Year and earnings thereon must be held, separately invested and used to reduce subsequent Company Contributions, pay Plan expenses, or for any other purposes determined by the Administrator." JA117 (¶ 53). Though annual Forfeitures dwarfed the amount of annual Plan Expenses, the Committee did not use a single dollar of Forfeitures to pay Plan Expenses between 2019 and 2022. JA120-121 (¶¶ 62, 66). After Plaintiffs filed suit, the Plan's 2023 Form 5500 disclosed that the Committee allocated only $407,138 of the $15 million in 2023 Forfeitures toward a fraction of the roughly $1.5 million in Plan Expenses that year. JA119-120 (¶¶ 60, 62, 63, n.10). By failing to apply hardly any Forfeitures to pay Plan Expenses from 2019 to 2023 (other than the small amount in 2023), the Committee caused participants to bear over $6.7 million in Plan Expenses during that period. JA120 (¶ 63).

Instead of using Forfeitures to pay Plan Expenses, the Committee applied the lion's share of them—roughly $36.6 million between 2019 and 2023—to reduce WPP's future Company Contributions. JA120-121 (¶¶ 61, 66). There was no indication from 2019 to 2023 that WPP would have been unable to make its Company Contributions absent the Committee using Forfeitures to offset them.

During that period, WPP earned revenues of over $12 billion and operating profits of over $1.2 billion each year. JA128 (¶ 99). And its decisions to set its Company Contribution levels were driven by the need to attract and retain talented employees, not based on anticipated Forfeitures. JA126-127 (¶¶ 91, 93).

The Committee's decisions not to use Forfeitures to pay Plan Expenses made participants worse off. Participants were made to pay millions "in Plan expenses to the Plan's third-party service providers, both directly and indirectly, that should never have come out of (or reduced the value of) their accounts." JA107 (¶ 4).

## III. Procedural History

### A. The Original Complaint and First Dismissal Decision

On December 19, 2024, Plaintiffs—on behalf of themselves, a class of participants and beneficiaries in the Plan, and the Plan itself—filed a putative class action complaint against the Committee and WPP alleging that their use of Plan Forfeitures violated ERISA ("Original Complaint"). JA12 (¶1). Plaintiffs sued under two of ERISA's remedial provisions, 29 U.S.C. § 1132(a)(2) and (a)(3). JA13 (¶ 4). The Original Complaint included three claims for relief relevant here: (1) a claim against the Committee for breaching its duty of loyalty, 29 U.S.C. § 1104(a)(1)(A), JA26-27 (¶¶ 83-88); (2) a claim against the Committee for breaching its duty of

prudence, 29 U.S.C. § 1104(a)(1)(B), JA27-28 (¶¶ 89-95); and (3) a claim against WPP for failing to prudently monitor the Committee, JA31-32 (¶¶ 107-113).[3]

All three claims were fundamentally based on the same set of allegations. The Original Complaint asserted that during the class period (running from December 13, 2018 through the date of judgment), the Plan Committee "consistently and reflexively" opted to use Forfeitures to reduce Company Contributions (to the benefit of WPP) rather than to defray Plan Expenses (to the benefit of participants). JA24 (¶¶ 72-73). By allocating Forfeitures in a way that favored WPP's interests over those of the Plan's participants, the Committee breached the duty of loyalty. JA26 (¶¶ 84-85). And by doing so reflexively and without an impartial and reasoned decision-making process, the Committee breached its duty of prudence. JA28 (¶ 91). Based on these breaches by the Committee, the Original Complaint alleged that WPP's failure to monitor the Committee could be reasonably inferred. JA31-32 (¶ 111).

The district court dismissed all three claims. It first dismissed the disloyalty claim with prejudice. The court explained that the Original Complaint "interprets the duty of loyalty to create a benefit that the Plan document itself does not guarantee—

[3] The Original Complaint also asserted two additional claims for violations of ERISA's prohibited transaction rules in 29 U.S.C. § 1106. JA29-30 (¶¶ 96-106). Because Plaintiffs are not appealing the district court's dismissal of those claims, they are omitted from the procedural history.

the use of Forfeitures to pay administrative expenses." JA84. According to the court, "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their *promised* benefits." JA85 (quoting *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 877 (D. Ariz. 2025)) (court's emphasis). The court also speculated that because Company Contributions are discretionary, WPP "would have been well within its rights simply not to provide employer contributions during the putative class period" had Defendants used Forfeitures to pay Plan Expenses. JA86. The court also found Plaintiffs' theory "difficult to harmonize" with regulations promulgated by the Treasury Department requiring that forfeitures in defined benefit plans (not at issue here) be put towards defraying employer contributions. JA87-88 (citing 26 C.F.R. § 1.401-7(a)). Ultimately, the court said that "[a] fiduciary does not violate the duty of loyalty merely by following the explicit terms of a plan document that permits the use of forfeitures to fund employer contributions." JA92.

The court next dismissed the imprudence and failure-to-monitor claims without prejudice. As to the imprudence claim, the court found that, to the extent Plaintiffs challenge the Committee's decision-making process in deciding how to allocate Forfeitures, "their allegations are too conclusory to establish a plausible entitlement to relief." JA97. And because the court found that Plaintiffs failed to plead plausible underlying fiduciary breach claims against the Plan Committee, the

court also dismissed the derivative claim against WPP for failing to monitor the Committee. JA104. The court granted Plaintiffs leave to replead the imprudence and duty-to-monitor claims. JA105.

### B. The Amended Complaint and Second Dismissal Decision

Plaintiffs then filed an Amended Complaint that included only the two claims dismissed without prejudice (an imprudence claim against the Plan Committee and a failure-to-monitor claim against WPP). JA106 (¶ 1).[4] The Amended Complaint added a number of allegations showing that allocating Forfeitures toward Plan Expenses would not reasonably have threatened WPP's future Company Contributions—meaning that the Committee's consistent use of Forfeitures to offset those contributions and near total failure to use Forfeitures to pay Plan Expenses implied an imprudent decision-making process.

In particular, the Amended Complaint alleged that because annual Plan Expenses were miniscule relative to WPP's Company Contributions from 2019 to 2023—amounting to less than 2% of the $371,223,216 in Company Contributions—allocating Forfeitures to Plan Expenses would have been "immaterial" to WPP's

[4] Because the duty-of-loyalty claim was dismissed with prejudice, Plaintiffs omitted it from the Amended Complaint, as this Court does "not require futile repleading of a claim that has been dismissed with prejudice." *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (explaining that "the fact that Appellants' amended complaint lacked the CFAA cause of action does not amount to a waiver of that cause of action for purposes of appellate review.")

contribution decisions, which were based on the imperative to attract and retain talented employees. JA126-127 (¶¶ 91, 94-95). It relatedly alleged that WPP's ability to make its Company Contributions was not reasonably in doubt, given that from 2019 to 2023, it earned annual revenues of over $12 billion and operating profit of over $1.2 billion each year. JA128 (¶¶ 98-99). Because there was "no benefit to participants from using [Forfeitures] to offset Company Contributions instead of to defray Plan Expenses," the Amended Complaint alleged that the Committee's actions indicated an imprudent decision-making process. JA134 (¶ 125). The Amended Complaint made clear, however, that "Plaintiffs do not allege that ERISA prohibits fiduciaries from *ever* using [Forfeitures] to offset Company Contributions," but rather that the Committee's actions breached its fiduciary duties "under the specific facts and context of this Plan[.]" JA131 (¶ 112); *see also* JA23 (¶ 71).

The district court nevertheless dismissed the Amended Complaint in its entirety. Regarding the allegations that allocating Forfeitures to Plan Expenses would not have threatened WPP's ability to make contributions—and that the Committee's near total failure to do so implied an imprudent process—the district court said this argument improperly "assumes" from the Committee's "permissible choice" that the Committee lacked a prudent process. JA161. It explained without elaboration that "the simple assertion that the employer did not need to use the

Forfeitures for discretionary employer contributions does not suggest that it was imprudent to do so." JA162.[5] And because it found that the Amended Complaint did not state a claim that the Committee was imprudent, the district court also found that it did not state a claim against WPP for failing to monitor the Committee. JA165. The court thus dismissed both claims with prejudice and entered final judgment for Defendants. JA166; JA167.

## SUMMARY OF THE ARGUMENT

When plan fiduciaries are granted discretion over plan assets, ERISA requires them to exercise that discretion prudently and solely in the interest of participants and beneficiaries. The Committee did not do so here. Instead, it consistently and reflexively used plan assets (Forfeitures) in a manner that made the Plan and its participants worse off while benefiting WPP by over $36 million. Those allegations give rise to a plausible inference that the Committee was both disloyal and imprudent, and that WPP breached its duty to monitor the Committee.

There is no question that the Plan expressly gave the Committee discretion to allocate Forfeitures, and that the choices available to it included paying Plan

[5] The district court also found unpersuasive the Amended Complaint's separate allegations that the Committee was imprudent because it failed to exhaust the funds in the Plan's Forfeiture account by year end. *See* JA162-165. For purposes of this appeal, Plaintiffs do not rely on the argument that Forfeiture accounts were required to have a zero balance as of a certain date. Thus, the district court's ruling regarding these allegations is not material.

Expenses or offsetting WPP's Company Contributions. The former option would have directly benefited participants by lowering the expenses charged to their accounts and increasing their investment balances. Yet the Committee hardly ever selected that option from 2019 to 2023. Instead, it used Forfeitures almost exclusively to reduce WPP's future contribution obligations (by over $36 million in total)—even though there was no threat of WPP being unable to meet those obligations—thereby benefiting WPP at the expense of the Plan and its participants. It appears that the Committee even failed to use Forfeitures to pay Plan Expenses despite having more than enough money left over to do so *after* defraying contributions. That is the very type of self-interested and unexamined conduct that ERISA forbids.

The district court dismissed these claims based on a series of legal errors that misunderstand ERISA's fiduciary framework. In dismissing Plaintiffs' disloyalty claim, the court explained that "the fiduciary duty is fulfilled" as long as participants receive their "promised benefits," and that because the Plan does not promise that expenses will be covered, the Committee's allocations did not violate its duties. JA85. But ERISA's fiduciary duties are not limited to ensuring that participants receive the specific benefits expressly guaranteed in plan documents. Indeed, ERISA provides a standalone cause of action for such benefit denials, *see* 29 U.S.C. § 1132(a)(1)(B), that is set apart from its fiduciary standards and the causes of action

available to enforce them, 29 U.S.C. § 1104(a), 29 U.S.C. § 1132(a)(2)-(3). Those standards govern all discretionary decisions involving the management and disposition of plan assets and can be violated regardless of whether benefits are properly paid. That is evident from numerous decisions from the Supreme Court and this Court endorsing such claims. By collapsing fiduciary duties into benefit payments, the district court effectively nullified ERISA's core protections.

In any event, the district court is wrong that Plaintiffs "make no allegation that they did not receive their promised benefits." JA85. To the contrary, the Plan expressly provided that Forfeitures could be used to pay Plan Expenses, which would allow participant accounts to bear fewer expenses and therefore grow larger over time. And participants were entitled to a loyal and prudent decision regarding whether to use Forfeitures in that manner. By categorically failing to consider that option, the Committee deprived participants of a concrete benefit the Plan expressly contemplated. Thus, even under the district court's own theory—that fiduciary duties are limited to enforcing plan promises—Plaintiffs have plausibly alleged a violation of ERISA's fiduciary duties.[6]

[6] The district court also relied on Treasury Department materials to dismiss the disloyalty claim, but those materials do not support its decision. Treasury guidance merely confirms that forfeitures may be used either to pay administrative expenses or to reduce employer contributions. It does not suggest that fiduciaries should, or even may, *always* allocate forfeitures to benefit employers at the expense of participants.

The court made a similar error in dismissing Plaintiffs' imprudence claim. It faulted Plaintiffs for merely "assum[ing]" from the Committee's "permissible choice" to use Forfeitures to offset WPP's contributions that the Committee acted imprudently. JA161. But simply because a choice is "permissible" under the *plan* does not make it permissible under *ERISA*. That proposition follows directly from ERISA's fiduciary standards, which requires fiduciaries to follow plan terms only "insofar" as doing so comports with ERISA. 29 U.S.C. § 1104(a)(1)(D). As the Supreme Court made clear, this means that "the duty of prudence trumps the instructions of a plan document[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). And here, far from assuming anything, Plaintiffs plausibly alleged based on well-pled facts that the Committee's decisions were imprudent; the fact that they were authorized by the Plan is no defense.

Plaintiffs also allege that WPP, which appointed and had the authority to remove members of the Plan Committee, breached its fiduciary duty to monitor the Committee. Noting that this claim is derivative of the claims against the Committee, the district court—having dismissed those claims—also dismissed the failure-to-monitor claim as a natural consequence. Because the court erred in dismissing Plaintiffs' fiduciary-breach claims against the Committee, it also erred in dismissing the failure-to-monitor claim against WPP.

## STANDARD OF REVIEW

This Court "review[s] the grant of a motion to dismiss *de novo*, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences[,]" it follows that "a claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021).

## ARGUMENT

### I. Plaintiffs plausibly alleged that Defendants breached their fiduciary duties

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (Straub, J., dissenting in part) (citing 29 U.S.C. § 1109(a)).[7] As explained below, Plaintiffs plausibly alleged each

[7] The plan-loss requirement is relevant only to claims brought under 29 U.S.C. § 1132(a)(2). *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir.), *cert. denied sub nom.*

of these elements with respect to their disloyalty and imprudence claims against the Plan Committee, and their failure-to-monitor claim against WPP.

**A. Defendants are indisputably ERISA fiduciaries**

ERISA's definition of fiduciary offers two paths to fiduciary status relevant here. First, ERISA accords fiduciary status to anyone that "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii). In addition to those who are vested with discretionary authority by the plan, ERISA further renders a fiduciary anyone who, in practice, "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i); *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006) ("Thus, § 1002(21)(A) creates a bifurcated test: Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually been

---

*Argent Tr. Co. v. Cedeno*, 145 S. Ct. 447 (2024) ("[T]he Section 502(a)(2) vehicle for enforcing Section 409(a) provides for only plan-wide remedies."). Here, Plaintiffs' claims arise under both § 1132(a)(2) and (a)(3). *See* JA13 (¶ 4); JA107-108 (¶ 5). The cause of action under § 1132(a)(3) does not require any loss to the plan. *See Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996) (explaining that § 1132(a)(3) allows for "individual relief for breach of a fiduciary obligation[.]"). Thus, to the extent Plaintiffs invoke that provision, Plaintiffs need only plausibly allege that Defendants are fiduciaries and that they breached their duties.

granted discretionary authority, regardless of whether such authority is ever exercised.") (internal citation and quotations omitted).

Against these standards, Defendants' fiduciary status is so clear that they never even challenged it below. Because the Committee is the Plan's named administrator "with broad authority over the administration and management of the Plan," JA109 (¶ 17), it is plainly a fiduciary as one who "has" discretionary authority. 29 U.S.C. § 1002(21)(A)(iii); 29 C.F.R. § 2509.75-8, Q&A (D-3) (2026) (explaining that a "plan administrator . . . must, b[y] the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section 3(21)(A)(iii) of [ERISA].") (quoting 29 U.S.C. § 1002(21)(A)(iii)). The Committee also acted as a fiduciary in allocating Plan assets (Forfeitures) under the "exercise" prong for so-called "functional fiduciaries." *See* 29 U.S.C. § 1002(21)(A)(i). The Plan granted the Committee broad discretion to allocate Forfeitures to "reduce subsequent Company Contributions, pay Plan expenses, or for any other purposes determined by the Administrator." JA117 (¶ 53). In choosing among those options, the Committee squarely exercised discretionary authority "respecting [plan] management." 29 U.S.C. § 1002(21)(A)(i). And because Forfeitures are Plan assets, the Committee's decisions were also an exercise of "any authority or control respecting management or disposition of its assets." *Id.* The

Committee was thus unquestionably a fiduciary in allocating Forfeitures and was required to adhere to ERISA's fiduciary standards when doing so.

WPP's fiduciary status is equally clear. As alleged, WPP is a named fiduciary that appointed the Committee's members and had authority to remove them. JA110 (¶ 19). That authority triggered the fiduciary duty to monitor the Committee in the exercise of its fiduciary role—including the Committee's actions in allocating Forfeitures. *Pessin v. JPMorgan Chase U.S. Benefits Exec.*, 112 F.4th 129, 143 (2d Cir. 2024) ("The appointing fiduciary . . . continues to have a fiduciary duty to monitor the activities of its appointees.").

### B. Defendants breached their fiduciary duties in allocating Plan Forfeitures

Plaintiffs also plausibly alleged that the Committee breached its fiduciary obligations in allocating Plan Forfeitures and that WPP breached its own duties to monitor the Committee. The Committee breached ERISA's duties of loyalty and prudence by consistently and reflexively using Forfeitures to defray WPP's Company Contributions rather than to pay Plan Expenses, even though that decision (under the facts here) was objectively worse for participants and favored WPP. From those allegations, it can reasonably be inferred that the Committee (1) elevated WPP's interests over the Plan's participants (in violation of the duty of loyalty); and (2) employed a flawed decision-making process and would have reached a different decision had it used a reasoned one (in violation of the duty of prudence). Plaintiffs

also plausibly alleged that, based on the Committee's breaches, WPP breached its duty to monitor the Committee.

### 1. The Plan Committee breached its duty of loyalty

"Perhaps the most fundamental duty of a [fiduciary] is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (citation modified); *John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360, 367 (2d Cir. 1994) (fiduciary's decisions "must be made with an eye single to the interests of the participants and beneficiaries") (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir. 1982)). Plaintiffs' allegations show that the Committee's Forfeiture allocations consistently elevated the interests of WPP over that of the Plan's participants by using those Plan assets to save WPP money instead of using them to save participants money.

It is undeniable that the Plan gave the Committee discretion to use Forfeitures to pay Plan Expenses that the Plan's participants would otherwise be forced to pay, and that doing so would have increased participant account balances. *See* JA17 (¶ 30).[8] But from the start of the class period through 2022, the Committee did not

[8] Because the Original Complaint's duty-of-loyalty claim was dismissed with prejudice, Plaintiffs did not include that claim in the Amended Complaint. *See*

put a *single* dollar of Forfeitures toward those Expenses. *See, e.g.*, JA18-22 (¶¶ 34-63); JA120 (¶ 62). And while it put just over $400,000 of the $15 million in 2023 Forfeitures toward Expenses, JA119-121 (¶¶ 60, 62, 66), it is not clear whether it decided to do so only after Plaintiffs filed their Original Complaint, JA107 (¶ 4). In any event, the Committee still left over $1.1 million in Expenses for participants to bear for that year. JA121 (¶ 66).

Yet while neglecting Plan Expenses almost entirely, the Committee saw fit to apply tens of millions in Forfeitures during the same period to offset WPP's future Company Contribution payments. JA18-22 (¶¶ 35-63); *see also* JA121 (¶ 66). There is no question that the Committee's "decisions to use [F]orfeitures to reduce employer contributions was, all else being equal, in the best interest of WPP because that option decreased WPP's own contribution costs." JA23 (¶ 68). Specifically, the Committee's allocations allowed WPP to avoid paying tens of millions of dollars to the Plan. *E.g.*, JA18-21 (¶¶ 35, 41, 47, 53, 59). That decision was also self-interested, because the Committee is an appendage of WPP. JA15 (¶ 18).

But these allocations were not in the best interests of participants. Had the Committee instead (or in addition) used Forfeitures to offset Plan Expenses—which are otherwise borne by participants—those expenses would not have been deducted

---

JA106, n.1. Accordingly, Plaintiffs cite the Original Complaint when discussing the merits of their disloyalty claim and provide parallel cites to the Amended Complaint when appropriate.

from participants' individual accounts, and "the value of the Plan and the value of the participant's individual accounts would have been greater thereby providing greater retirement benefits to Plan participants and beneficiaries." JA24 (¶ 73). Instead, participants received nothing from the Committee's consistent use of Forfeitures to defray WPP's contributions, because WPP would have paid those contributions from its own coffers if Plan assets were unavailable. There was no indication that WPP would have reduced its contributions if it had not been able to take advantage of Forfeitures. And there was no other apparent way in which the Committee's allocations were helpful to participants. Thus, while WPP benefitted handsomely through the Committee's allocations, there were simply "no facts or circumstances throughout the class period" that made the Committee's choices favorable ones for participants. JA23 (¶ 71).

On these facts, it is more than plausible that the Committee failed to "exclude all selfish interest" and did not act with "complete loyalty to the interests of the beneficiary." *Pegram*, 530 U.S. at 224. This states a claim for breach of the duty of loyalty. *See In re: UnitedHealth ERISA 401(k) Litig.*, No. 25-CV-1751 (ECT/ECW), 2026 WL 1786167, at *6 (D. Minn. June 22, 2026) (denying motion to dismiss duty-of-loyalty claim where complaint alleged that "[u]sing forfeitures to reduce UnitedHealth's matching and profit-sharing contributions benefitted UnitedHealth,

if not greatly, while using forfeitures to reduce Plan expenses would have advantaged Plaintiffs.").

### 2. The Plan Committee breached its duty of prudence

The Committee's decisions were also imprudent. The duty of prudence requires fiduciaries to act with the "care, skill, prudence, and diligence under the circumstances then prevailing" that would be exhibited by a prudent person in a similar capacity. 29 U.S.C. § 1104(a)(1)(B). This standard "asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Sacerdote*, 9 F.4th at 107 (internal quotations and citation omitted). "A claim for breach of the duty of prudence will survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed or that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.* at 108 (internal quotations and citation omitted). A flawed process can be inferred where the challenged decision is so plainly misguided "that an adequate investigation would have revealed [its] imprudence." *Pension Ben. Guar. Corp.*, 712 F.3d at 719. The Amended Complaint's factual allegations more than support that inference here.

As explained above, from 2019 to 2022, the Committee did not use a single dollar of Forfeitures to pay Plan Expenses. *E.g.*, JA121 (¶ 66). And in 2023, it

applied roughly $400,000 in Forfeitures toward just a portion of the Plan's roughly $1.5 million in Expenses that year. JA119-121 (¶¶ 60, 62, 66). This was true even though the Plan document clearly authorized the Committee to use Forfeitures on Plan Expenses, JA117 (¶ 53); even though doing so would have directly increased the value of participant accounts, JA107 (¶ 4); and even though the Forfeiture account balance at the end of every calendar year was far greater than the Plan Expenses borne by participants in that year, the next year, or any year, JA120-121 (¶¶ 63-64, 66).

The Committee instead opted to devote the majority of Forfeitures toward offsetting WPP's contributions to the Plan. JA120-121 (¶¶ 61, 66). While there could be circumstances where defraying employer contributions could theoretically serve participants' interests—for example if there were some concern the employer would otherwise be unable to make its contribution payments—that was not the case here. Indeed, from 2019 to 2023, WPP earned revenues of over $12 billion and operating profits of over $1.2 billion *each year*. JA128 (¶ 99). And like other large companies, its decisions to set its Company Contribution levels were driven by the need to attract and retain talented employees, not by the Committee's anticipated Forfeiture-allocation decisions. JA126-127 (¶¶ 91-93). Further, because WPP's contributions from 2019 to 2023 (totaling over $371 million) dwarfed Plan Expenses during that period (totaling roughly $7.2 million), the notion that WPP's contributions would

have been threatened had Forfeitures first been used to pay the Plan's comparatively modest expenses is not credible. *Compare* JA119 (¶ 59) *with* JA121 (¶ 66).

In other words, "under the circumstances then prevailing," 29 U.S.C. § 1104(a)(1)(B), there was every reason to believe WPP's Company Contributions absent Forfeiture offsets would have been exactly the same as the sum of its actual Contributions plus those offsets. And there was certainly no basis to conclude that using a small fraction of Forfeitures (which totaled roughly $71 million between 2019 and 2023, JA119 (¶ 60)) to first pay Plan Expenses—while still leaving the vast majority of Forfeitures available to offset Company Contributions—would have in any way threatened future contributions. The net effect is that the Committee's decisions to use Forfeitures to offset Company Contributions, rather than to pay Plan Expenses enriched WPP and diminished participant accounts by roughly $6.7 million (not including any forsaken investment returns) for no good reason. JA120 (¶ 63).

"This amount, combined with the fact that the Committee made the same asset-reducing choice each year from 2019 through 2023, plausibly shows an imprudent process." *In re: UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *5. Indeed, the Committee's repeated decisions not to use Forfeitures on Plan Expenses and to instead "reflexively" use them to defray Company Contributions unnecessarily, JA107 (¶ 4), indicates that the Committee did not conduct an adequate

investigation (or any investigation) into whether their allocations would serve the participants' interests, *e.g.*, JA125, JA129, JA134-135 (¶¶ 85, 104, 125, 127).

**3. WPP breached its duty to monitor the Plan Committee**

Plaintiffs also state a plausible claim against WPP for breaching its duty to monitor the Committee in allocating Plan Forfeitures. "There is no doubt that those who appoint plan administrations [sic] have an ongoing fiduciary duty under ERISA to monitor the activities of their appointees." *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011); 29 C.F.R. § 2509.75-8, Q&A (FR–17) (2026) (Department of Labor questions and answers) (explaining that "[a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."). "The duty exists so that a plan administrator or sponsor cannot escape liability by passing the buck to another person and then turning a blind eye." *Howell*, 633 F.3d at 573.

Here, WPP had authority to appoint and remove Committee members who were responsible for allocations of Forfeitures. JA135 (¶ 133). WPP was therefore obligated to monitor the Committee and evaluate whether its Forfeiture allocations were loyal and prudent. JA135-136 (¶¶ 133-134). Instead, WPP allowed the Committee to repeatedly use Forfeitures for WPP's exclusive benefit. This makes it

more than plausible that WPP turned a blind eye to the Committee's disloyalty and imprudence, or, at a minimum, failed to meaningfully assess the Committee's compliance with its fiduciary duties.

### C. Defendants' breaches caused losses to the Plan and its participants

There is no conceivable dispute that Plaintiffs plausibly alleged that the breaches caused losses to their accounts (and to the Plan). The Committee's imprudent and disloyal Forfeiture allocations reduced Plan assets and decreased participants' account balances by making participants pay for expenses that otherwise could have been paid by Forfeitures. *See, e.g.*, JA107 (¶ 4) (alleging that the Committee's failure to use Forfeitures to pay Plan Expenses resulted in participants paying millions "in Plan expenses to the Plan's third-party service providers, both directly and indirectly, that should never have come out of (or reduced the value of) their accounts."); JA24 (¶ 73) (alleging that had the Committee used Forfeitures on Plan Expenses, "the value of the Plan and the value of the participant's individual accounts would have been greater thereby providing greater retirement benefits to Plan participants and beneficiaries."). The "loss" element of Plaintiffs' § 1132(a)(2) claim is therefore satisfied.

## II. The district court erred in dismissing Plaintiffs' claims

The district court dismissed all three claims in two separate decisions. Both decisions evince a fundamental misunderstanding of ERISA and a failure to properly

construe Plaintiffs' allegations. The net effect of the court's decisions is to insulate fiduciaries from all liability whenever their actions do not directly violate plan terms. Because that result cannot be squared with ERISA or binding precedent from the Supreme Court and the Second Circuit, this Court should reverse.

### A. The district court's reasons for dismissing Plaintiffs' disloyalty claim against the Committee are contrary to ERISA and the rules of pleading

The district court dismissed the Original Complaint's disloyalty claim against the Plan Committee for three separate reasons. None have merit.

#### 1. ERISA fiduciaries do not fulfill their duties solely by paying benefits due under plan terms

The district court dismissed Plaintiffs' disloyalty claim by first explaining that "the fiduciary duty is *fulfilled*" so long as participants receive their "promised benefits." JA85 (emphasis added). And because Plaintiffs failed to allege that the Plan document "required the defendants to use Forfeitures to pay administrative expenses"—meaning that payment of Plan Expenses is not a "benefit"—the court explained that Defendants' failure to do so cannot violate the duty of loyalty. *Id.*

The district court's belief that a fiduciary's duties are discharged entirely by participants' receipt of promised benefits is completely untethered to ERISA. For starters, it would render superfluous vast swaths of the statute. ERISA already provides a standalone cause of action for participants who do not receive their benefits due. *See* 29 U.S.C. § 1132(a)(1)(B) (authorizing cause of action by

participant "to recover benefits due to him under the terms of his plan."); *Varity Corp.*, 516 U.S. at 512 (explaining that section 1132(a)(1)(B) offers a "remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims."). It then *separately* sets out standards governing fiduciary conduct, *see* 29 U.S.C. §§ 1104, 1106, and establishes *separate* causes of action to enforce them, 29 U.S.C. § 1132(a)(2)-(3), (5). The majority of these latter provisions—the heart of the statute—would be a dead letter if the sum total of a fiduciary's duties were to pay benefits due.[9] Indeed, courts often *dismiss* fiduciary-breach claims challenging benefit denials as impermissibly duplicative of benefit claims under 29 U.S.C. § 1132(a)(1)(B). *See Spillane v. New York City Dist. Council of Carpenters*, No. 23-247, 2024 WL 221816, at *3 (2d Cir. Jan. 22, 2024) (holding that the "district court thus properly dismissed [plaintiff's] claim for breach of fiduciary duties under [29 U.S.C. § 1132(a)(3)]" where the plaintiff "provides no separate basis for his breach of fiduciary duty claim differentiating it from his denial of benefits claim"). Like all statutes, ERISA cannot be interpreted to "render [its] provisions superfluous." *United States v. Anderson*, 15 F.3d 278, 283 (2d Cir. 1994).

---

[9] The lone exception would be the obligation to act "in accordance with the documents and instruments governing the plan[.]" 29 U.S.C. § 1104(a)(1)(D). But if providing benefits under a plan's terms were the full extent of a fiduciary's duties, then § 1104(a)(1)(D) would be the only standard needed; the statute's prudence, loyalty, and diversification requirements would be pointless. *See* 29 U.S.C. § 1104(a)(1)(A)-(C).

The district court's logic would also mean that broad categories of well-trod ERISA cases would be invalid. For example, claims challenging a fiduciary's retention of unnecessarily expensive plan service providers or investment options—whose fees often come out of participant accounts—would fail the district court's test to the extent a reasonable fee is not technically a plan "benefit." That would presumably be news to this Court and the Supreme Court, which have repeatedly endorsed precisely such claims as firmly grounded in ERISA's fiduciary standards. *See, e.g.*, *Sacerdote*, 9 F.4th at 107-111 (reversing dismissal of fiduciary-breach claim challenging inclusion of expensive retail-share class fund on plan menu); *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022) (in context of claim challenging inclusion of high-fee funds in plan menu, explaining that "[i]f the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty").

These and other quintessential fiduciary breaches would thus go unremedied under the district court's novel rule. Consider a fiduciary of a health plan who misrepresents to a participant that the plan covers a certain benefit, and then ultimately does not pay up because the benefit is not in fact covered under the plan. If a fiduciary's duties are in fact "fulfilled" so long as participants receive their plan benefits, JA85, the misled participant's fiduciary breach claims would fail. That result would directly run afoul of this Court's precedent. *See, e.g.*, *Sullivan-Mestecky*

*v. Verizon Commc'ns Inc.*, 961 F.3d 91, 98, 105 (2d Cir. 2020) (affirming summary judgment on claim under 29 U.S.C. § 1132(a)(1)(B) because participant was "provided . . . with the benefits that the plan had always promised" but vacating and remanding for consideration of § 1132(a)(3) claim because fiduciaries' misrepresentations gave rise to plausible claim for fiduciary breach and entitlement to equitable remedies).

Yet even crediting the district court's apparent belief that ERISA's fiduciary standards are entirely co-extensive with benefit payments, the Committee's failure to use Forfeitures to pay Plan Expenses squarely relates to Plan benefits. Participants in defined contribution plans are owed "the value of [their] account[s] unencumbered by any fiduciary impropriety." *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 297 (3d Cir. 2007). This means that the Plan's participants were entitled to benefits based on a loyal and prudent decision by the Committee among the Forfeiture-allocation options contemplated by the Plan. Yet as discussed, the Committee breached those duties in failing to allocate Forfeitures toward Plan Expenses for no good reason, which reduced participant account balances below what they would have been had the Committee complied with its duties. Thus, participants did not get everything they were entitled to. *Id*. ("ERISA entitles individual-account-plan participants not only to what *is* in their accounts, but also to

what *should be* there given the terms of the plan and ERISA's fiduciary obligations.").[10]

**2. Speculation that WPP might have reduced its contributions if the Committee used Forfeitures to pay Plan Expenses is not a proper basis for dismissal**

The district court's second basis for dismissal fails for a different reason: it upends the rules of pleading. The court explained that "[P]laintiffs' argument"—that the Committee should have used Forfeitures to pay Plan Expenses—impermissibly "assumes that Plan participants would have received greater benefits if the defendants had used Forfeitures to cover administrative expenses instead of future employer contributions." JA86. The court deemed that assumption "faulty because the Plan document does not require that WPP make employer contributions at all." *Id.* The court thus reasoned that if Defendants "had used Forfeitures to cover administrative expenses, [WPP] would have been well within its rights simply not to provide employer contributions during the putative class period." *Id.*

This rationale suffers multiple problems, the first being that the district court impermissibly failed to credit Plaintiffs' allegations. On a motion to dismiss, the

[10] The district court also appeared to take comfort that its rationale was in line with what it took to be the weight of district court authority. *See* JA85-86 (citing cases). But as one district court recently found in surveying the 51 decisions in ERISA forfeiture cases as of June 9, 2026, there is "no clear trend or consensus in these decisions that might justify a particular outcome." *In re: UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *8-9.

district court was required to "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff." *Olson*, 29 F.4th at 71. Here, Plaintiffs alleged that the Plan incurred Expenses, JA16 (¶ 22), and that "[t]he use of Plan assets to pay Plan Expenses reduces the funds available to Plan participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted," *id.* (¶ 24). Plaintiffs thus alleged that if the Committee had instead used Forfeitures to defray those Expenses, "the value of the Plan and the value of the participant's individual accounts would have been greater." JA24 (¶ 73). Accepting those allegations as true, as the court must, there is no question that participants would have been better off had the Committee used Forfeitures on Plan Expenses. Put differently, Plaintiffs did not merely "assume[]" it, JA86; they plausibly alleged it.

But rather than credit those allegations, the district court faulted Plaintiffs for not ruling out a possible explanation for the Committee's conduct: the concern that WPP—in response to the Committee's decision to use a small portion of Plan Forfeitures to pay Plan Expenses—*might* have reduced its Company Contributions. For starters, this explanation is entirely implausible. WPP is the Plan's sponsor, JA15 (¶ 17), meaning that it *wrote* the very Plan language authorizing the Committee to use Forfeitures on Plan Expenses; that fact alone belies the idea that WPP would exact revenge for the Committee doing what the Plan expressly permitted. It is also

incongruous (and implausible) that WPP would choose to avenge the *Committee's* decision by reducing Company Contributions—a tactic that only hurts *its own employees* and undermines *WPP's own* competitive standing and goodwill.

But even if that were a plausible response, it still is no reason for dismissal. This Court "do[es] not require an ERISA plaintiff to rule out every possible lawful explanation for the conduct he challenges. To do so would invert the principle that the complaint is construed most favorably to the nonmoving party on a motion to dismiss." *Sacerdote*, 9 F.4th at 108 (internal quotations and citations omitted). Because the district court did just that, its second rationale for dismissing Plaintiffs' disloyalty claim is untenable.

#### 3. Pronouncements by the Departments of Treasury and Labor on which the court relied are either irrelevant or unhelpful

Lastly, the district court found Plaintiffs' theory "difficult to harmonize with established practice," JA87—in particular, a Treasury Department regulation and another proposed regulation, and a Labor Department amicus brief. These sources are either irrelevant, helpful to Plaintiffs, or unilluminating.

As to the promulgated Treasury regulation, the district court itself acknowledged that it applies only to "defined benefit plans," *id.*, requiring such plans to use forfeitures "as soon as possible to reduce the employer's contributions under the plan," 26 C.F.R. § 1.401-7(a). But the Plan here is a defined contribution plan, not a defined benefit plan. The regulation is irrelevant for that reason alone. *Gardner-*

*Keegan v. W.W. Grainger, Inc.*, No. 1:25-CV-5233, 2026 WL 194772, at *8 (N.D. Ill. Jan. 26, 2026) (in ERISA action challenging allocation of plan forfeitures, explaining that 26 C.F.R. § 1.401-7(a) is "not binding on this matter.").

And for good reason, as defined benefit plans are materially different from defined contribution plans. In the former, participants are entitled to a fixed periodic payment determined by a specified formula set forth in the Plan. *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 637 n.1 (1990). Forfeitures cannot be used to modify this fixed payment. 26 U.S.C. § 401(a)(8) ("[F]orfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan"). Moreover, "the employer generally shoulders the investment risk" of providing these fixed payments, and "[i]t is the employer who must make up for any deficits[.]" *Beck v. PACE Int'l Union*, 551 U.S. 96, 98 (2007). Because of the risk that employers might be unable to pay benefits due (a risk not present in defined contribution plans), "the federal PBGC by law acts as a backstop and covers the vested pension benefits up to a certain amount and often in full." *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 546 n.2 (2020) (citing 29 U.S.C. § 1322(a), (b)). It is thus unsurprising that the Treasury Department would require that forfeitures in defined benefit plans be applied toward employer contributions. But that requirement in no way means that using forfeitures to defray contributions in *defined contribution* plans—which do not share the same concerns and are not backstopped by the PBGC—is *always* consistent with a

fiduciary's duties, even where the plan accords discretion to apply them for other purposes. If anything, the regulatory approach to defined benefit plans shows that fiduciaries should treat defined contribution plan forfeitures differently.

The court next relied on a *proposed* Treasury regulation that, while actually applicable to defined contribution plans, either adds nothing to the analysis or helps Plaintiffs. JA88-89. Similar to the Plan language here, the proposed regulation says that forfeitures can be used "'(1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, *or* (3) to increase benefits in other participants' accounts in accordance with plan terms.'" Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282 (proposed Feb. 27, 2023) (emphasis added). Though this proposed regulation is irrelevant in the first instance because it lacks the force of law, even if it were promulgated, the regulation just gets the Committee back to where it started—with discretion over how to apply Forfeitures. And ERISA requires fiduciaries, when exercising discretion, to act prudently and loyally. The Treasury Department has never suggested otherwise.[11] If anything, what it *has* said is that it supports the allocation of defined contribution plan Forfeitures

[11] In any event, the Treasury Department is not charged with administering ERISA's fiduciary standards. 29 U.S.C. § 1135 ("Secretary [of Labor] may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of [Subchapter 1, which includes Part 4, Fiduciary Responsibility]); Reorganization Plan No. 4 of 1978, available at https://www.dol.gov/agencies/ebsa/laws-and-regulations/laws/executive-orders/4.

to "pay plan administrative expenses" and even "to increase benefits in other participants' accounts." *Id*.

Finally, the district court noted that Plaintiffs' position is also at odds with the position staked out by the Department of Labor in an amicus brief in a different case, where the Department argued that a fiduciary's exercise of discretion to use forfeitures to reduce employer contributions does not violate the duty of loyalty. JA89-90 (citing Brief of U.S. Sec'y of Lab. as Amicus Curiae Supp. Def.-Appellee, *Hutchins v. HP Inc.*, No. 25-826 (9th Cir. July 9, 2025), ECF No. 24-1 ("DOL Brief")). But the Department there reached that conclusion based on one of the same faulty rationales relied on by the court here: that the plaintiff's complaint did not account for the speculative and implausible possibility that the plan sponsor could reduce contributions—and thereby trigger a "funding shortfall"—in retaliation for the fiduciary using forfeitures on plan expenses. DOL Brief at 19. Because the *Hutchins* plaintiff was no more required than Plaintiffs here to rule out "every possible lawful explanation" for the fiduciary's conduct, *Sacerdote*, 9 F.4th at 108—let alone fanciful ones—the DOL's argument is unpersuasive.

### B. The district court's dismissal of Plaintiffs' imprudence claim against the Plan Committee ignored the Amended Complaint's factual allegations and misunderstood ERISA's fiduciary duties

In deciding Defendants' motion to dismiss the Original Complaint, the district court dismissed without prejudice Plaintiffs' imprudence claim against the Plan

Committee. The court explained that there must be "specific facts alleged" that invite an inference of imprudence. JA97. According to the court, the Original Complaint's allegations were "too conclusory" to reasonably infer that the Committee's decision-making process was imprudent. *Id.*

Plaintiffs then addressed those perceived deficiencies in their Amended Complaint, which added a bevy of allegations further demonstrating that the Committee's Forfeiture decisions lacked any Plan-centered rationale and were therefore the product of a deficient decision-making process. Included among them were allegations (discussed in Part I(B)(2), *supra*) showing that WPP's ability to satisfy its contribution commitments was not reasonably in doubt, such that the decision to allocate Forfeitures toward offsetting those contributions—while almost entirely ignoring Plan Expenses—was not in the interest of the Plan or its participants. *See, e.g.*, JA126-127 (¶¶ 91-93). The Amended Complaint further alleged directly that the Committee lacked "a reasoned and impartial decision-making process" because it failed to investigate whether its decisions prioritized participants' interests. *E.g.*, JA134-135 (¶¶ 125, 127). From those allegations, coupled with the repeated and apparently reflexive nature of the Committee's decisions, *see* JA107, JA121 (¶¶ 4, 66), the Committee's imprudence can reasonably be inferred. *See McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *4 (N.D. Cal. Mar. 3, 2025) ("Plaintiff's argument that defendants . . .

conducted no reasoned and impartial decision-making process is plausible given that no other justification is readily apparent.").

That was still not enough for the district court, which dismissed the imprudence claim for reasons both legally and factually erroneous. First, the court said that the Amended Complaint wrongly "assumes from the defendants' *permissible choice* to use Forfeitures to cover future employer contributions that the Plan Committee lacked a prudent process for determining how to allocate Forfeitures." JA161 (emphasis added). But if anything, it was the court that made an improper assumption—namely, that the Committee's choice was "permissible" simply because the Plan allowed it. This assumption is belied by the court's own prior dismissal order, where the court rightly recognized that "'[t]he 'duty of prudence' can 'trump[] the instructions of a plan document.'" JA97 (quoting *Dudenhoeffer*, 573 U.S. at 421). That conclusion, the Supreme Court explained in *Dudenhoeffer*, follows directly from ERISA's fiduciary duty to act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter*." *Dudenhoeffer*, 573 U.S. at 421 (quoting 29 U.S.C. § 1104(a)(1)(D)) (court's emphasis). It "would make little sense" for the statute to excuse fiduciaries from following plan terms that conflict with ERISA's provisions (like the duty of prudence) if "the duty of prudence is defined by . . . the plan documents, since in

that case the duty of prudence could never conflict with a plan document." *Dudenhoeffer*, 573 U.S. at 421.

In short, the fact that allocating Forfeitures to defray Company Contributions rather than pay Plan Expense may have been permissible *under the Plan* does not thereby make it permissible *under ERISA*. And Plaintiffs' central point is that on the facts here, the Committee's actions—though authorized by the Plan—violated ERISA's duty of prudence. "If there is a breach, then abiding by the Plan terms cannot save defendants." *McManus*, 2025 WL 732087, at *4.

The district court's second basis for dismissal is equally untenable. The court explained that the "*simple assertion* that the employer did not need to use the Forfeitures for discretionary employer contributions does not suggest that it was imprudent to do so." JA162 (emphasis added). But the Amended Complaint is not based on a "simple assertion" that repeatedly defraying Company Contributions was unnecessary; to the contrary, it pleads numerous facts showing precisely *why* that was the case. For example: WPP earned revenues of over $12 billion and operating profits over $1.2 billion each year, JA128 (¶ 99); WPP's Company Contribution levels were driven by the need to attract and retain talented employees, not anticipated Forfeitures, JA126-127 (¶¶ 91-93); and in any event, using Forfeitures (totaling roughly $71 million, JA119 (¶ 60)) to first pay Plan Expenses (totaling roughly $7.2 million, JA121 (¶ 66)) would still have left the vast majority of

Forfeitures available to defray contributions. Against those facts, the Committee's decision to nevertheless consistently prioritize WPP's contribution obligations over Plan Expenses was plainly not in participants' interest. The district court glossed over those facts entirely.

The district court did so again when it faulted the Amended Complaint for speculating that the Committee "must have lacked a prudent process because it did not use Forfeitures in the way that the plaintiffs would have liked[.]" JA162. But Plaintiffs' critique of the Committee's Forfeiture-allocation decisions is not a matter of taste, and its allegations of an imprudent process are far more than speculation. Again, the Amended Complaint alleges a robust set of facts showing that the Committee's Forfeiture-allocation decisions were decidedly worse for participants than if the Committee prioritized Plan Expenses. Taking actions that leave participants worse off for no valid reason is not just something Plaintiffs did not "like[]," *id.*, it is imprudent, in violation of ERISA, *see* 29 U.S.C. § 1104(a). And the well-pled facts showing that the Committee's repeated Forfeiture allocations did just that give rise to the reasonable inference that "an adequate investigation would have revealed to a reasonable fiduciary" that the Committee's Forfeiture allocations were imprudent. *Sacerdote*, 9 F.4th at 108. It was error, therefore, to disregard the Amended Complaint's allegations of a deficient process, *see*, *e.g.*, JA134-135 (¶¶ 125, 127), as speculative or conclusory.

### C. Because the district court wrongly dismissed the underlying fiduciary-breach claims against the Committee, it wrongly dismissed the derivative claim against WPP for failing to monitor the Committee

In dismissing the Amended Complaint's claim against WPP for breaching its duty to monitor the Committee, the district court first explained that the latter claim cannot be maintained "'absent an underlying breach'" by the Plan Committee. JA165 (quoting *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016)). And having found that Plaintiffs failed to state plausible claims against the Committee, the court accordingly found that their derivative claim against WPP also failed. *Id.* Because the court erred in dismissing Plaintiffs' underlying claims against the Committee, it also erred in dismissing the failure-to-monitor claim against WPP.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's dismissal of Count I of the Original Complaint, and Counts I and II of the Amended Complaint.

DATED: July 20, 2026

Respectfully submitted,

**STRIS & MAHER LLP**

*/s/ Jeff Hahn*
Jeff Hahn

Attorney for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Court Rule 32.1(a)(4)(A) because it contains 10,983 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(f).

Undersigned counsel certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft 365.

DATED: July 20, 2026

Respectfully submitted,

**STRIS & MAHER LLP**

*/s/ Jeff Hahn*
Jeff Hahn

Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

DATED: July 20, 2026

Respectfully submitted,

**STRIS & MAHER LLP**

*/s/ Jeff Hahn*
Jeff Hahn

Attorney for Plaintiffs-Appellants